UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Henri Nobles,** | ) | **CASE NO. 1:06 CV 1045** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Ford Motor Company, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

### Introduction

This matter is before the Court upon defendant Ford Motor Company's Motion for Summary Judgment (Doc. 14). For the following reasons, the motion is GRANTED.

### Facts

Plaintiff, Henri Nobles[1], commenced this action in the Cuyahoga County Common Pleas Court against defendants, Ford Motor Company (hereafter, Ford) and John Doe Corporations. Plaintiff asserted three claims. Count One alleges a violation of Ohio Revised Code § 4123.90. Count Two alleges fraud. Count Three alleges *respondeat superior*.

---

[1] While plaintiff was originally represented by counsel, he now proceeds *pro se.*

1

Defendants thereafter removed the case to this Court.

Plaintiff began his employment with Ford in 1989, as a temporary part-time employee at the Walton Hills Stamping Plant (the Plant). He was hired as a full-time hourly employee in 1992. On March 16, 2006, plaintiff was terminated from his employment with Ford pursuant to its progressive discipline system in accordance with the collective bargaining agreement (CBA). Employees are subject to progressive discipline beginning with a reprimand and warning (R&W) for the first offense. If the employee continues to be disciplined, the penalty progresses up to and including termination.

On August 31, 2004, plaintiff walked off the job without permission 16 minutes prior to the end of his shift. Plaintiff admits that he left his work area without permission. Plaintiff was disciplined by his supervisor, Patrick Waltenbaugh, on September 2, 2004. He received an R&W and time lost in the disciplinary hearing. The time lost in the hearing was suspended, and plaintiff lost no pay.

On September 1, 2004, plaintiff again walked off the job 40 minutes before the end of his shift. Plaintiff admits that he left his work area without permission. Plaintiff was disciplined by Waltenbaugh on September 2, 2004. He was given balance of the shift (BOS) plus a one day suspension. Both disciplines were suspended with a warning that the next incident would result in time off without pay.

On September 2, 2004, plaintiff again left his work area without permission and the job went down. Plaintiff admits that he left his work area without permission. That same day, plaintiff was disciplined by Waltenbaugh and given an R&W plus three days off without pay.

On February 7, 2005, plaintiff was out of his work area without permission and the job

2

went down for one hour and ten minutes.  Plaintiff admits that he left his work area without permission. That day, plaintiff was disciplined by Waltenbaugh and received the progressive penalty of R&W and one week off.  He was sent home for the BOS and the following day. Four days of the penalty were suspended.

When plaintiff returned to work on February 9, 2005, he disrespectfully refused a work assignment within his classification that was given to him by his supervisor.  A disciplinary hearing was held and plaintiff was given R&W and BOS for Disrespect to a Member of Management.

On August 9, 2005, the Plant issued an Employee Information Bulletin regarding medical passes.  Plaintiff received a copy which instructed that hourly employees were to get a pass to go to the medical department unless it is a serious injury or life-threatening situation. (Amy Adams aff.; pltf. depo.)

On September 1, 2005, plaintiff filed a claim with the Ohio Bureau of Workers' Compensation for an alleged injury to his right shoulder and lower back.  The claim was disallowed.  (pltf. depo.)

On November 2, 2005, plaintiff left his work area and went to Ford's medical department for treatment of an alleged injury without securing a pass from his supervisor, Roy Jones.  Plaintiff was treated for a bruise on his right arm and declared fit for work. Plaintiff was disciplined and given the next step in progressive discipline- BOS and two weeks off- for leaving his work area without permission.  Plaintiff was off for BOS on November 18, 2005 and returned to work on December 5, 2005.

On December 5, 2005, plaintiff was out of his work area without permission eight

3

minutes before the end of his shift. Plaintiff admits that he left his work area without permission. In accordance with the next progressive discipline penalty, plaintiff was given a 30 day suspension by supervisor, Mike Golub. (Adams aff.; pltf. depo.)

Effective February 27, 2006, plaintiff was assigned, at his request, to the Assembly Department 0800-2C on the 255 Line working under Nick Gliatta's supervision on the day shift. On March 15, 2006, plaintiff left his assigned work area without permission and was disciplined by Gliatta on March 16. Gliatta had been checking the production counts on the computer for the Assembly lines and could see the job was down on the 255 Line indicating that no parts had been produced by plaintiff for a period of 11 minutes. Gliatta went over to see why the job was down and saw that plaintiff was not in his assigned area. Plaintiff received the final disciplinary step- discharge. Gliatta also noticed that three other hourly employees were absent from their assigned work area on the 253 Line. These employees were subsequently disciplined for leaving their work areas without permission. (Adams aff.; Nick Gliatta aff.)

Plaintiff thereafter filed his Complaint. This matter is now before the Court upon defendant Ford Motor Company's Motion for Summary Judgment.[2]

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*,

---

[2] While plaintiff named as defendants John Doe Corporations, subsidiaries and/or parent company of Ford, these defendants have not been identified.

4

8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### Discussion

### (1) retaliation

Plaintiff alleges that his termination was in retaliation for filing his workers' compensation claim in violation of Ohio Revised Code § 4123.90.

> Under Ohio law:
>
> To establish a prima facie case for wrongful termination based on retaliation for filing a workers' compensation claim, i.e., retaliatory discharge, [a plaintiff] must be able to prove the following: (1) [he] suffered an occupational injury; (2) [he] filed a workers' compensation claim; and (3) [his] discharge was in contravention of O.R.C. § 4123.90, i.e., [he] was subsequently discharged from [his] employment in retaliation for filing the claim for benefits.
>
> If the employee sets forth a prima facie case, the burden shifts to the employer to set forth a nondiscriminatory reason for the discharge. ... The employee must then demonstrate that the employer's purported reason is pretextual and that in actuality, the employer discharged the employee because of the employee's protected activity under the Ohio Workers' Compensation Act.

*Goersmeyer v. General Parts, Inc.*, 2006 WL 3702640 (Ohio App. 9th Dist. Dec. 18, 2006) (citations omitted).

Plaintiff cannot establish the prima facie case because he fails to show that he satisfies the first and third elements.

Plaintiff has no evidence to show that he suffered an occupational injury.  Rather,

plaintiff admitted that his doctors and Ford's doctor agreed that plaintiff's workers' compensation claim involved a personal injury.  (pltf. depo. vol. 2 at 65-69)

Nor can plaintiff show that his discharge was in retaliation for filing the claim. Instead, the evidence shows that plaintiff's discharge was a result of the progressive discipline system.  As discussed above, plaintiff was disciplined for leaving his assigned work area on numerous occasions and for being disrespectful to a supervisor.  In fact, plaintiff does not deny that he left his work area on these occasions.  Furthermore, plaintiff admitted at deposition that he has no evidence that his supervisors had knowledge of his workers' compensation claim.  (pltf. depo. 220-235)  Additionally, five disciplines (four for leaving his work area and one for disrespect) were issued to plaintiff prior to his filing of the workers' compensation claim.  Thus, these disciplines could not have been retaliatory in nature.

Even if plaintiff could satisfy the prima facie burden, Ford has asserted a legitimate nondiscriminatory reason for plaintiff's discharge.  Plaintiff was discharged after leaving his work area seven times without permission and for disrespecting a supervisor, all within an 18 month period.  The discharge was the culmination of a progressive disciplinary policy pursuant to the CBA and applicable to all hourly employees.  Plaintiff has no evidence of pretext.

For these reasons, summary judgment on this claim is warranted.

**(2) fraud**

Plaintiff alleges that in an effort to conceal the unlawful retaliation, defendant made up false disciplinary actions and had the company doctor conceal plaintiff's legitimate medical injuries.

> Under Ohio law,
>
> In order to prevail on a claim of fraud a party must prove all of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact; (b) which is material to the transaction at hand; (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (d) with the intent of misleading another into relying upon it; (e) justifiable reliance upon the representation or concealment; and (f) a resulting injury proximately caused by the reliance.

*Walker v. Firelands Community Hospital,* 2007 WL 625815 (Ohio App. 6th Dist. March 2, 2007) (citations omitted).  Additionally, fraud must be plead with particularity.  *Barr v. Lauer*, 2007 WL 117502 (Ohio App. 8th Dist. Jan. 18, 2007) ("[I]n all averments of fraud, the circumstances shall be stated with particularity. A failure to plead fraud with particularity may warrant a dismissal for failure to state a claim.")

Plaintiff fails to plead his claim with particularity.  Even if he did, the claim fails because, as discussed above, plaintiff admits that he was out of the work area when disciplined.  Thus, the disciplinary actions were not false.

For these reasons, this claim fails.

**(3)** *respondeat superior*

Plaintiff alleges that Ford is responsible under the theory of *respondeat superior* for the acts or omissions of its agents or employees.

 "To succeed utilizing the doctrine of *respondeat superior*, [plaintiff] must show (1) that a principal-agent relationship existed... and (2) that [the] tortious conduct was committed within the scope of [the] employment."  *Thomas v. Speedway Superamerica, LLC,* 2006 WL 2788522 (Ohio App. 9th Dist. Sept. 29, 2006).

As discussed above, plaintiff has not shown any underlying tortious conduct and,

8

therefore, this claim fails.

### Conclusion

For the foregoing reasons, defendant Ford Motor Company's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

                                          /s/ Patricia A. Gaughan
                                          PATRICIA A. GAUGHAN
                                          United States District Judge

Dated: 3/15/07